Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| DANIEL DELIZ NIEVES<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202200648 | REVISIÓN JUDICIAL del DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Núm.:<br>F1-279-22 |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

El 30 de noviembre de 2022, el Sr. Daniel Deliz Nieves ("Sr. Deliz Nieves" o "Recurrente"), quien se encuentra confinado en la Institución Correccional Ponce 501, presentó por derecho propio e *in forma pauperis* recurso de revisión judicial intitulado *Certiorari*. Nos solicita que revisemos la *Respuesta de Reconsideración al Miembro de la Población Correccional* emitida el 24 de octubre de 2022 y notificada 2 de noviembre de 2022. Mediante dicho dictamen, el Departamento de Corrección y Rehabilitación ("DCR") denegó la petición de remuneración económica y bonificación extraordinaria solicitada por el Recurrente por concepto de labores realizadas en la institución correccional.

Por los fundamentos que expondremos, **revocamos** la determinación recurrida.

**I.**

En lo pertinente a la controversia ante nuestra consideración, el Sr. Deliz Nieves actualmente se encuentra confinado en la Institución Correccional Custodia Mínima de Ponce. Surge de su escrito ante nos, que el Recurrente alega que realizó labores en la

aludida institución carcelaria como trimero, albañil y electricista, entre otras, por aproximadamente dos (2) años. Además, arguyó, que conforme a la Tabla de Compensación a Confinados ("Tabla de Compensación") procedía que se le remunerara económicamente por las labores realizadas. De igual forma, destacó ser "diestro y tener pleno dominio y conocimiento del oficio".[1] A esos fines, presentó *Solicitud de Remedios Administrativos* el 31 de agosto de 2022.

Así las cosas, el 13 de septiembre de 2022, notificada el 28 de septiembre de 20222, el DCR emitió *Respuesta* por conducto de la evaluadora, Maritza Valentín Lugo. En esta, expuso lo siguiente:

> El confinado en referencia este asignado en el área de mantenimiento interior desde el 11 de marzo de 2021. **Ha sido orientado en varias ocasiones de que esta labor no gana bonificación extraordinaria; ni compensación económica**. En sus alegaciones de que ha realizado tareas como albañil, electricista, etc. Se **ha orientado de que esto no consta en sus evaluaciones de trabajo**, y su asignación de trabajo es a mantenimiento interior. Se ha discutido con el Superintendente Sr. Harry Feliciano y se ha determinado que no realiza labores extraordinarias, que ameritan solicitar bonificación especial, ni compensación económica. (Énfasis nuestro).

Inconforme con la determinación, el Recurrente presentó *Reconsideración* el 3 de octubre de 2022. La aludida solicitud fue denegada el 18 de octubre de 2022 y notificada el 2 de noviembre del mismo año. Mediante esta, la coordinadora de la Oficina de Remedios Administrativos de Ponce, Joan Mariani Ortiz, fundamentó la determinación en lo siguiente:

> El Sr. Harry Feliciano Maldonado, superintendente, informa que la **remuneración periódicamente fue suspendida** basado en las instrucciones emitidas por el Secretario[sic], José Negrón Fernández con el fin de minimizar gastos en la agencia. **La directriz no ha sido cancelada, a pesar de ser emitida en el año 2014**. En ese periodo el área de sociales realizó el ejercicio de orientar a toda la población correccional y se enfatizó que después de esa fecha, los confinados que se asigne a trabajar solamente se le concederá bonificación adicional.

---

[1] Apéndice de *Escrito un Cumplimiento de Resolución*, pág. 4.

Insatisfecho, el 18 de noviembre de 2022, recibido el 30 de noviembre de 2022, el Recurrente acude ante esta Curia y solicita que revoquemos el dictamen emitido por el DCR.

**II.**

### A. Revisión de las determinaciones administrativas

La Ley Núm. 38 de 30 de junio de 2017, según enmendada y mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9601 *et seq.,* dispone el alcance de la revisión judicial de las determinaciones de las agencias. Sec. 4.5 de la LPAU*, supra.* Tanto la referida Ley como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T¬JAC v. Caguas Centrum,* 148 DPR 70 (1999).

En lo concerniente a las órdenes o resoluciones finales emitidas por una agencia, la Sección 3.14 de la LPAU, *supra,* dispone que se "deberá incluir y exponer separadamente **determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación,** la disponibilidad del recurso de reconsideración o revisión según sea el caso". 3 LPRA sec. 9654. (Énfasis nuestro). Por otro lado, la precitada Sección 3.14 dispone que luego de emitida la orden o resolución, se apercibirá a la parte sobre "el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes". *Íd.*

**B. *Manual de Normas de Procedimientos sobre Oportunidad de Empleo y Trabajo para Miembros de la Población Correccional***

El *Manual de Normas de Procedimientos sobre Oportunidad de Empleo y Trabajo para Miembros de la Población Correccional* de 22 de junio de 2000 ("Manual") fue promulgado con el fin de establecer como política pública del Departamento de Corrección el "proveer a los miembros de la población correccional experiencias de trabajo o empleo remunerado para fortalecer su autoestima, combatir el ocio y proveerles de experiencias y destrezas que viabilicen su rehabilitación". Parte I del Manual, *supra.* Mediante la aprobación del aludido Manual se establecieron unas "guías uniformes en el referido y seguimiento de los miembros de la población correccional en programas de trabajo mientras permanecen en instituciones correccionales […]."

Particularmente, el inciso III (A)(2) del citado Manual, *supra,* dispone que "[t]oda asignación de trabajo se hará sobre bases objetivas, dando igual oportunidad a todos los miembros de la población correccional". Siendo así, se tomarán en consideración los siguientes criterios: destrezas, preparación académica o vocacional, habilidades espaciales, patrones de conducta, intereses individuales, nivel de custodia y recursos disponibles en la institución. *Íd.* Cabe destacar que la participación de los miembros de la población correccional en los programas de trabajo "será estrictamente voluntaria, pero la selección y naturaleza del trabajo quedará a discreción del Comité de Clasificación y Tratamiento". Parte III (B) del Manual, *supra.*

En cuanto a la remuneración de los trabajados realizados por los miembros de la población correccional, el inciso G de la parte III del precitado Manual, *supra,* establece que **se les pagará según establezca el (la) Administrador(a) mediante orden administrativa,** con excepción del salario o jornal que devenguen la

población correccional de los programas de la Corporacion de Empresas de Adiestramiento y Trabajo (CEAT) o programas especiales en la comunidad. (Énfasis nuestro). A su vez, el acápite IV (D)(5) añade que los miembros de la población correccional recibirán una bonificación a su sentencia según corresponda en ley.

Por otro lado, al amparo de la Orden Administrativa DCR-2016-11 de 2 de noviembre de 2016, se estableció la *Tabla de Compensación a Confinado.* Esta, dispone la compensación monetaria diaria de la labor realizada por los confinados, dependiendo del trabajo que realice y de los criterios de evaluación establecidos en la misma.

**III.**

En el presente recurso, el Recurrente nos solicita que revisemos la determinación emitida por el DCR, en la que le denegó compensación monetaria por las labores realizadas durante dos (2) años en la institución correccional. Señala en el recurso presentado que las labores realizadas ameritan una bonificación extraordinaria, particularmente en los trabajos realizados como handyman, tales como electricista, plomero, albañil y áreas verdes.

Es la contención del DCR que el Sr. Deliz Nieves fue asignado el 11 de marzo de 2021 a realizar labores en el área de mantenimiento interior y áreas verdes. De igual forma, esboza que el 19 de abril de 2021 se le orientó al Recurrente de que dichas labores a las que fue asignado recibirían bonificación adicional, pero no compensación económica. Sostiene que el Sr. Deliz Nieves no presentó evidencia ni ha planteado en ocasiones anteriores que tiene derecho a compensación por las labores realizadas. Además, arguye que el Recurrente tampoco presentó evidencia de que se haya negado a realizar las labores a pesar de tener conocimiento de que no recibiría compensación económica.

El 11 de marzo de 2021 el Comité de Clasificación y Tratamiento llevó a cabo una reunión donde asignó al Recurrente a realizar labores en el área de mantenimiento interior (todas las áreas verdes). Surge del *Acuerdo del Comité de Clasificación y Tratamiento*, que la realización de dichas tareas daría lugar a una bonificación de conformidad con las evaluaciones recibidas por el Recurrente y que dichas tareas no recibirían compensación económica. El aludido documento no está firmado ni contiene las iniciales del Recurrente, sin embargo, el DCR alega que la reunión fue realizada en ausencia del Recurrente por motivo de la pandemia.[2] Posteriormente, el 28 de octubre de 2022, el Comité de Clasificación y Tratamiento asignó al Recurrente a realizar labores de construcción en el área de lavandería. Surge del documento intitulado *Acuerdos del Comité de Clasificación y Tratamiento (Para Uso Exclusivo de Actividades)*, que las labores a realizarse serían remuneradas económicamente.[3] Cabe destacar que este documento contiene las iniciales del Recurrente.

En el presente caso, el Recurrente nos alega que los trabajos que realizó como *"handy man"*, no fueron remunerados, a pesar de estar vigente la Orden Administrativa DCR 2016-11, la cual dispone la compensación de los miembros de la población correccional para los diferentes trabajos a realizarse. Sobre ello, el DCR admite en su oposición al recurso que la Orden Administrativa DCR-2016-11 es la orden vigente, la cual establece las labores que recibirán compensación y la cantidad a ser remunerada.

A pesar de la contención del DCR sobre que los Acuerdos del Comité de Clasificación y Tratamiento no constaba que el Recurrente realizaría labores como electricista, consta en el expediente del caso ante nos, una comunicación interna del DCR (correo electrónico), en la cual esboza que el Recurrente realizó

---

[2] Apéndice *Escrito un Cumplimiento de Resolución,* págs. 22-23.
[3] *Íd,* págs. 24.

labores de electricista en la institución penal dentro del periodo de **7 de febrero de 2019 a 12 de noviembre de 2020.**[4] No empece a ello, la aludida comunicación establece que dicha labor realizada por el Recurrente no conlleva una remuneración económica. Discrepamos del criterio utilizado por el DCR para determinar que no aplica remuneración en el caso de las labores como electricista realizadas por el Recurrente. Veamos.

El inciso G de la parte III del precitado Manual, *supra*, establece que **se les pagará a los miembros de la población correccional por las labores realizadas según establezca el (la) Administrador(a) mediante orden administrativa,** con excepción del salario o jornal que devenguen la población correccional de los programas de la Corporación de Empresas de Adiestramiento y Trabajo (CEAT) o programas especiales en la comunidad. De conformidad, la Orden Administrativa DCR-2016-11 dispone que la compensación diaria por los trabajos de electricista se pagará a $5.00. Dicha Orden Administrativa estaba vigente a la fecha de asignación de las labores al Recurrente en febrero de 2019 y hasta la culminación de las mismas en noviembre de 2020 y así lo reconoce el DCR en su escrito en oposición al recurso.[5] En vista de que la política pública del Departamento de Corrección es "proveer a los miembros de la población correccional experiencias de trabajo o empleo remunerado para fortalecer su autoestima, combatir el ocio y proveerles de experiencias y destrezas que viabilicen su rehabilitación", resolvemos que erró el DCR al no remunerar los trabajos de electricista realizados por el Recurrente durante el periodo del 7 de febrero de 2019 al 20 de noviembre de 2020.

Además, el DCR **no demostró** que el Recurrente haya sido notificado de que dichas labores no serían remuneradas, a pesar de

---

[4] *Íd*, págs. 20-21.
[5] *Escrito un Cumplimiento de Resolución,* pág. 13.

que se desprende de la Orden Administrativa DCR-2016-11 que las funciones de electricista conllevan remuneración económica. Los documentos que utiliza el DCR como evidencia de que se informó al Recurrente sobre el hecho de que no tendría derecho a remuneración económica, meramente disponen que las tareas a realizarse no recibirán compensación económica y no evidencian que este hecho haya sido notificado al Recurrente. Tampoco consta en el expediente de autos que se le haya provisto el documento titulado *Acuerdo del Comité de Clasificación y Tratamiento* para las labores como electricista, el cual contiene las condiciones de trabajo y las labores asignadas, además de las iniciales del confinado. Recordemos que la participación de los miembros de la población correccional en los programas de trabajo "será estrictamente voluntaria", por lo que le correspondía al DCR evidenciar que el Recurrente fue informado previo a iniciar los trabajos como electricista que estos no serían remunerados.

En cuanto a las labores relacionadas al mantenimiento interno de áreas verdes, no nos convence la postura del DCR de que el Recurrente fue informado de que no recibiría remuneración económica. Sin embargo, la Tabla de Compensación establecida en la Orden Administrativa DCR-2016-11 no dispone de una cuantía específica para el puesto de mantenimiento interno (todas las áreas verdes) el cual efectuaba el Recurrente, por lo tanto, no procede remuneración económica.

### IV.

Por los fundamentos antes expuestos, **revocamos** la *Respuesta de Reconsideración al Miembro de la Población Correccional* emitida por el DCR. En consecuencia, ordenamos al DCR a que emita el pago correspondiente al señor Daniel Deliz por los trabajos realizados como electricista desde el 7 de febrero de 2019 hasta el 20 de noviembre de 2020.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones